In re Dominic J. RECHICHI, Debtor.

PRUDENTIAL–BACHE SECURITIES, INC., Plaintiff,

v.

Dominic J. RECHICHI, Defendant.

Bankruptcy No. 89–00975–BKC–SMW. Adv. No. 89–0253–BKC–SMW–A.

United States Bankruptcy Court, S.D. Florida.

Sept. 25, 1989.

Gary M. Freedman, Fowler, White, Burnett, Hurley, Banick & Strickroot, Miami, Fla., for Prudential–Bache Securities, Inc.

Ronald P. Gossett, Gossett, McDonald, Gossett & Crawford, Hollywood, Fla., and Neil J. Tannenbaum, Ft. Lauderdale, Fla., for Dominic J. Rechichi.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE having came on before the Court upon the Complaint of Prudential–Bache Securities Inc. (the "creditor") against Debtor, Dominic J. Rechichi (the "debtor") for nondischargeability of a debt pursuant to 11 U.S.C. § 523(a)(2)(A), and the Court, having heard the testimony, examined the evidence presented, observed the candor and demeanor of the witnesses, considered the arguments of counsel, and being otherwise fully advised in the premises does hereby make the following Findings of Fact and Conclusions of Law:

Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a), (b) and the district court's general order of reference. This is a core proceeding in which the Court is authorized to hear and determine all matters relating to this case in accordance with 28 U.S.C. § 157(b)(2)(I).

The creditor is a securities dealer whose business includes acting as a broker in the purchase and sale of index options, a highly speculative and extremely volatile form of securities trading. The debtor became a customer of the creditor in July, 1986. Thereafter, for nearly fifteen months the creditor executed debtor's option trade orders on credit. Pursuant to both the creditor's own policy and Federal regulations, the debtor was required to pay the creditor for each option purchase order on the following day. Continued trading was strictly conditioned on such timely payments. The account executive handling debtor's trading account passed by the debtor's business on the way to his office each morning, and would often pick up the debtor's payment for the previous day's purchases.

During the fifteen month relationship between the creditor and debtor, the debtor often accrued large trading losses. His cumulative losses were over $80,000 by September, 1987. Nevertheless, the debtor had to that point timely paid for all transactions on the settlement date. At the end of September 1987, debtor purchased $58,-154.43 worth of index options on which he quickly made a profit of approximately $21,000.00. Pursuant to the debtor's request, the creditor paid the debtor approximately $80,000 from that transaction, thereby depleting debtor's account with the creditor.

The transactions in question occurred on October 6, 7 and 8, 1987, when the debtor purchased a total of $124,500 of American Stock Exchange index options for which he issued to creditor on the respective settlement dates three checks totalling $124,-500.00 drawn on his sole proprietorship business bank account. During these three days of purchases the stock market was falling and the value of debtor's options were plummeting. In the last two transactions, the debtor was actually "averaging down", in an attempt to recoup his losses.

Before the transactions in question, debtor never defaulted on settlement payments. Further, debtor at the beginning of the relationship had completed an Option Client Information Form and Agreement wherein he stated that his annual income was $125,-000.00, his net worth exclusive of family residence was greater than $125,000.00 and that his estimated liquid net worth was greater than $125,000.00. Finally, the creditor delivered to the debtor just prior to the transactions in question its own checks amounting to approximately $80,000.00. However, unknown to the creditor, the maximum ledger balance in debtor's bank account during the period was only $22,-894.99. The debtor's income from his gas station business, his only other source of income, had only been about $20,000 for each of the past two years and moreover, the debtor's lease on the gas station was worthless. During this same period the debtor had at a minimum, $19,200.00 of regularly recurring personal liabilities per year.

On October 9, 1987, the same day the debtor made his final settlement payment on the transactions at issue here, he instructed his bank to stop payment on all three checks he had just delivered to the creditor. Notwithstanding, the debtor on the following Monday, again called the creditor's account executive instructing him to purchase still more index options. However, due to the extent of the debtor's irrational purchases during the preceding three days, the creditor demanded that the debtor pay for all his new option transactions with a cashier's check and present a letter to the creditor stating that he knew the risk inherent in his substantial index option transactions. The debtor declined to do so, and never entered into any further transactions with the creditor.

It is undisputed that if the creditor knew before or during the debtor's three-day gambling spree that he had insufficient funds to cover any of the transactions, the creditor would not have extended any credit whatsoever. Moreover, if the creditor had learned of the debtor's inability to cover even one of the checks or the subsequent stop payment on all three checks, the creditor would have immediately closed out debtor's position and recouped the majority of its losses.

■ Creditor filed the instant adversary proceeding under 11 U.S.C. § 523(a)(2)(A) to preclude discharge of a final judgment and order on motion for award of attorneys' fees in its favor which was entered in a prior federal district court action. Under 11 U.S.C. § 523(a)(2)(A) a debt will be excepted from discharge when a debtor makes a false representation when incurring a debt. To bar a discharge of a debt for a false representation or fraud the creditor must show the following: that the debtor made a false representation for the purpose and intention of deceiving the creditor; that the creditor relied on such representation; that its reliance was reasonably founded; and the creditor sustained a loss as a result of the representation. *In re Lacey*, 85 B.R. 908 (Bankr.S.D.Fla.1988). Furthermore, a debtor's intent to defraud may be inferred from the totality of the circumstances. *Ibid.* at 910; *In re Cabrera*, 71 B.R. 200 (Bankr.S.D.Fla.1987).

■ This Court has ruled on numerous occasions that obligations incurred by a debtor are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) where the debtor knew that checks issued to a creditor were worthless. In *Cabrera, supra*, this Court held that where a debtor knew that checks sold to creditor were worthless, the debt was nondischargeable. In *Lacey, supra*, creditor relied upon the previous relationship with the debtor in extending him credit. Where the creditor accepted worthless checks which debtor knew lacked supporting funds, this Court held that the debtor obtained money and extension of credit by false misrepresentation and fraud. *See also, Matter of Torrens*, 7 B.R. 229 (Bankr. S.D.Fla.1980).

In the case at bar, the debtor knew there were insufficient funds to cover the three checks in question. Even disregarding the debtor's actual knowledge, the evidence as a whole demonstrates the debtor's reckless disregard for the state of his checking account. Such disregard is tantamount to actual knowledge. *In re Kurdoghlian*, 30 B.R. 500, 502 (Bankr.App. 9th Cir.1983); citing *In re Houtman*, 568 F.2d 651 (9th Cir.1978). Moreover, the debtor knew that unless he issued the checks on the settlement dates the creditor would close out his position and refuse to extend further credit. *In re Younesi*, 34 B.R. 828 (Bankr.C.D. Ca.1983). Tendering the checks to creditor under these circumstances was an implicit representation by the debtor that the checks were backed by sufficient funds. This representation was obviously false. *In re Kurdoghlian, supra;* citing *Matter of Greenwald*, 2 B.R. 35, 36 (Bankr.S.D. Fla.1979).

Furthermore, the debtor continued to gamble on index options even though he knew the market was declining drastically and contrary to the advice of creditor's account executive. It has been held that a debtor who continues to play the market after the situation has deteriorated to the point he knows it is hopeless is guilty of false representations or actual fraud, po-

tentially rendering the debt non-dischargeable. *Matter of Greenwald, supra.*

Based upon the foregoing, the Court finds that the debtor knowingly and intentionally misrepresented to the creditor his intention and ability to cover the option transactions he ordered. Therefore, the Court finds that the final judgment and award of attorneys' fees owing to the creditor are nondischargeable under 11 U.S.C. § 523(a)(2)(A).

A separate Final Judgment of even date has been entered in conformity herewith.