In re Robert W. BLACK and Mary S. Black, Debtors.

FIRST LEASING AND FUNDING OF FLORIDA, INC., a Florida corporation, Plaintiff,

v.

Robert W. BLACK and Mary S. Black, Defendants.

Bankruptcy No. 88–5420–9P7. Adv. No. 88–481.

United States Bankruptcy Court, M.D. Florida, Fort Myers Division.

March 29, 1990.

**80**

Jeffrey W. Leasure, Fort Myers, Fla., for plaintiff First Leasing and Funding of Florida, Inc.

Alfred E. Johnson, Fort Myers, Fla., for defendants Robert W. Black and Mary S. Black.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS is a Chapter 7 liquidation case and the matter under consideration is an Amended Complaint filed by First Leasing and Funding of Florida, Inc. (Plaintiff), which seeks a determination that the debt owed by Robert W. Black and Mary S. Black (Debtors) to the Plaintiff is a nondischargeable obligation pursuant to § 523(a)(2)(A) of the Bankruptcy Code. The following facts which are relevant and germane to the disposition of this cause were established at the final evidentiary hearing:

The Debtors were the sole shareholders, officers and directors of a corporation known as Discount Travel Services, Inc. The Debtors were also officers and directors of a corporation known as Travel World International, Inc. Discount Travel Services, Inc., owned all of the stock of Travel World International, Inc. Discount Travel Services, Inc., was a conventional travel agency. Its subsidiary corporation, Travel World International, Inc., was in the business of selling vacation travel certificates to the general public.

On September 30, 1987, the Debtor, Robert W. Black, on behalf of Discount Travel Services, Inc., executed and delivered a mortgage containing a security agreement pledging all personal property owned by Discount Travel Services, Inc., to Heller Financial in consideration for the purchase of a commercial building located in Fort Myers, Florida, and known as Swamp Cab-

bage Court (commercial property). (Plaintiff's Exh. No. 6.) The Debtors had planned to move the offices of Discount Travel Services, Inc., and Travel World International, Inc., from their existing location to the commercial property and needed to install a commercial telephone system to continue to operate.

Some time after September 30, 1987, the Debtors, on behalf of Discount Travel Services, Inc., contacted the Plaintiff concerning the lease of a commercial telephone system. The Plaintiff is engaged in the business of leasing personal property. Typically, a lessee contacts the Plaintiff after choosing the personal property and the vendor. Thereafter, the Plaintiff obtains funding from a lending institution, purchases the personal property from the vendor and leases it to the lessee.

The Debtors contacted Gary Flowers of Belltone Communications, Inc., with respect to obtaining a telephone system. The Debtors' businesses were only several weeks away from moving into the commercial property and they urgently needed a telephone system to operate. Discount Travel Services, Inc., and Belltone entered into an agreement whereby Belltone would provide the Debtors with a telephone system for the sum of approximately $270,000. It is undisputed that the Debtors and their corporations were in desperate need of the telephone system as their businesses relied heavily on telemarketing to operate.

After reaching an agreement with Belltone, the Debtors approached the Plaintiff to obtain a lease of the telephone system. The Plaintiff having reviewed the Debtors' personal financial statements, an income statement and balance sheet for Discount Travel Services, Inc. and Travel World International, Inc. agreed to lease the telephone system to Discount Travel Services, Inc. As a condition to the Agreement, it was agreed that Discount Travel Services, Inc. would grant to the Plaintiff a second mortgage on the commercial property or that the Debtors would grant to the Plaintiff a second mortgage on the Debtors' homestead real property. The Debtors agreed to grant a second mortgage on the commercial property.

Some time prior to the lease closing scheduled for late Friday afternoon on December 18, 1987, counsel for the Plaintiff discovered that the recording of a second mortgage on the commercial property could constitute a default under the terms of the Heller Financial first mortgage (Plaintiff's Exh. No. 6.) At the closing, counsel for the Plaintiff advised the Debtors that the recording of the second mortgage on the property could constitute a default under the first mortgage to Heller Financial. The Debtors and counsel for the Plaintiff discussed this default provision over the telephone with counsel for Heller Financial. Counsel for Heller refused to consent to the granting of the mortgage and refused to waive the default provision on behalf of his client.

At this time, the president of the Plaintiff and counsel for the Plaintiff advised the Debtors that "there was no deal". In response, the Debtors offered to grant to the Plaintiff a security interest in $250,000 worth of personal property owned by them. The Debtors represented to the Plaintiff that the personal property was free and clear of liens and encumbrances. (Plaintiff's Exh. No. 3.) After a lengthy discussion, the Plaintiff agreed to accept the substitute collateral and the Debtor executed the Agreement (Plaintiff's Exh. No. 3). Counsel for the Plaintiff added a handwritten Paragraph 4 to the Agreement which required the Debtors to provide the personal property as collateral after closing of the loan. (Plaintiff's Exh. No. 3.) Thereafter, the lease transactions closed and the lease was funded by the Plaintiff. The Debtors were to provide a schedule of the personal property to the Plaintiff on or before December 24, 1987.

The Debtors did not provide a schedule of the personal property to the Plaintiff as agreed until some time in March 1988. The schedule revealed that the value of the personal property was only $147,000 (Plaintiff's Exh. No. 4). Immediately upon receipt of the schedule, counsel for the Plaintiff ordered a "rush" UCC–1 search

through Corporation Information Services. The results of the search revealed that Heller Financial had a prior security interest in the personal property which the Debtors represented to be free and clear of liens and encumbrances (Plaintiff's Exh. No. 5). It is noteworthy, however, that the Plaintiff did not perform a UCC–1 search prior to funding the lease transaction. Therefore, it is difficult to imagine that the Plaintiff relied reasonably upon the representation of the Debtors that their personal property was free and clear of liens.

After the Plaintiff discovered that the personal property was not free and clear of liens and encumbrances, counsel for the Plaintiff again made demand for either a second mortgage on the commercial property or a second mortgage on the Debtors' homestead. The Debtors refused. Sometime later, the lease went into default and the system was repossessed by the Plaintiff prior to the commencement of this Chapter 7 case.

The Plaintiff seeks a determination that the debt owed by the Debtors to the Plaintiff is nondischargeable pursuant to § 523(a)(2)(A) of the Bankruptcy Code which, in pertinent part, provides as follows:

### § 523. Exceptions to discharge

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge a individual debtor from any debt—

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

>> (A) false pretenses, a false representation, or actual fraud other than a statement respecting the debtor's or an insider's financial condition;....

In its Amended Complaint, the Plaintiff alleges that the debt is nondischargeable based on the Debtors' false representation that the personal property to be pledged to the Plaintiff was free and clear of liens and encumbrances. In opposition, although the Debtors concede that they executed the Agreement (Plaintiff's Exh. No. 3), they allege that they were unaware of the Hel-

ler Financial security interest in the personal property.

The Debtors' contention was contradicted by the testimony of Mr. Shields, former counsel for both Discount Travel Services, Inc. and the Debtors. Mr. Shields testified that the purchase of the commercial property was closed after approximately eight months of negotiation and extensive review of the relevant documents. In addition, Mr. Shields testified that he explained the provisions of the Heller Financial mortgage provisions to the Debtors and, further, that he explained that the mortgage granted a security interest in all personal property owned by Discount Travel Services, Inc.

 It is well established that the overriding purpose of the Bankruptcy Code is to provide the debtor with comprehensive, much-needed relief from the burden of his indebtedness by releasing him from virtually all of his debts. *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). In keeping with this policy, the exceptions to discharge set out in § 523 of the Bankruptcy Code are generally construed narrowly against a creditor and liberally in favor of the debtor. *See, In re Hunter*, 780 F.2d 1577 (11th Cir.1986). Thus, the burden lies with the creditor to prove by clear and convincing evidence that a particular obligation of the debtor falls within the scope of § 523. The Plaintiff under § 523(a)(2)(A) must prove fraud, that the conduct of the Debtors involves moral turpitude or intentional wrong. Fraud implied in law, which may exist without the imputation of bad faith, is clearly insufficient. However, reckless disregard for the truth or falsity of a statement constitutes a false representation for purposes of nondischargeability pursuant to 11 U.S.C. § 523(a)(2)(A). *See, Birmingham Trust National Bank v. Case*, 755 F.2d 1474 (11th Cir.1985).

 Assuming arguendo, that the conduct of the Debtors rises to the level of an intentionally false representation, the Plaintiff is also required to prove reasonable reliance upon the false representations made by the Debtors. The parties clearly agreed that the Plaintiff would be granted

additional collateral to secure the Debtor's obligation based on the lease transaction either by a second mortgage on the commercial property, or by a second mortgage on the Debtors' homestead. Only after the Debtors refused to grant either mortgage, was the issue of pledging personal property as collateral discussed. The Debtors urgently required that the lease transaction be closed. However, the Plaintiff was not under any compulsion to close the transaction, and apparently believed that the personal property to be pledged in the future would be free and clear of liens. However, this Court finds that the reliance placed upon the false representation allegedly made by the Debtors was not reasonable. The Plaintiff could have ordered a "rush" UCC–1 search through Corporate Information Services by telephone prior to funding the lease transaction. Instead, the Plaintiff proceeded with the transaction as planned, even though it was under no compulsion to do so without first obtaining documentation verifying the availability and condition of any collateral to be pledged. Therefore, this Court holds that the Plaintiff has failed to prove by clear and convincing evidence that it reasonably relied upon a false representation made by the Debtors, and the Complaint should be dismissed with prejudice.

A separate Final Judgment will be entered in accordance with the foregoing.