In re Frederick Lewis **POLLITT** and Theressa Douglas **Pollitt, Debtors.**

Robert J. **BRACCO** and Lena F. **Bracco, Plaintiffs,**

v.

Frederick Lewis **POLLITT** and Theressa Douglas **Pollitt, Defendants.**

Bankruptcy No. 90–4940–BKC–3P7. Adv. No. 91–59.

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Sept. 22, 1992.

John B. Macdonald, Jacksonville, Fla., for defendants.

Parker B. Smith, Ponte Vedra Beach, Fla., for plaintiffs.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This adversary proceeding is before the Court upon the complaint of Robert J. and Lena F. Bracco against both debtors as defendants seeking to except a debt from discharge pursuant to 11 U.S.C. § 523(a)(2)(A). A trial was held on June 30, 1992. At the conclusion of the plaintiffs' case, the Court granted defendants' motion to dismiss the complaint as to defendant Theressa D. Pollitt, leaving Frederick D. Pollitt as the sole defendant.

Upon the evidence presented, the Court enters the following Findings of Fact and Conclusions of Law:

### Findings of Fact

Defendant was an officer and director of a Florida corporation known as The Pollitt Company and its subsidiaries, Pollitt Builders, Inc., Pollitt Interiors, Inc., and Pollitt Properties, Inc. Frederick Pollitt managed the daily operations of Pollitt Builders, Inc., and Theressa D. Pollitt managed the daily affairs of Pollitt Interiors, Inc.

In August, 1990, plaintiff Robert J. Bracco first approached defendant concerning the construction of a custom home. The initial price discussed was $287,000.00. Eventually the price was reduced to $275,000.00. In return for the reduced price, plaintiff Robert J. Bracco agreed to pay $50,000.00 in cash in advance.

On September 3, 1990, the plaintiffs and Pollitt Builders, Inc. entered into a written contract for construction of the residence for a purchase price of $225,000.00. The contract did not refer to the $50,000.00 advance payment, nor did it require defendant to segregate any funds received from plaintiffs.

Pursuant to the agreement of the parties, plaintiff Robert J. Bracco delivered three checks to defendant: for $5,000.00 on August 30, 1990; for $22,000.00 on September 7, 1990; and for $23,000.00 on September 7, 1990. The checks were endorsed and deposited directly into a Pollitt Company bank account maintained with Barnett Bank ("Barnett account"), which was a holding account used to fund construction activities of Pollitt Builders, Inc.

By early September, 1990, defendant and Pollitt Builders, Inc. were suffering from the recession and the downturn in the construction industry, and defendant and the company were having difficulty paying their bills.

The company defaulted on payments to The Citizens & Southern Bank ("C & S"), causing C & S to freeze Pollitt Builder, Inc.'s bank account on September 5, 1990. Defendant did not receive notification of the freeze until approximately ten days later.

Defendant alleges that subsequent to the freeze, but before he was notified, proceeds from the advance checks were transferred from the Barnett account to the C & S account. Thus, those funds were frozen and set-off by C & S.

Subsequent to the execution of the contract and receipt of the plaintiffs' advance payment, Pollitt Builders, Inc. commenced work on construction of the residence. Plans were developed, at a cost of $1,000.00, and passed architectural review. Defendant provided $3,000.00 worth of services in connection with the planning. However, the financial difficulties prevented physical construction of the residence and by late October, 1990, defendant defaulted on his agreement to construct the residence.

At least a portion, if not all, of the funds advanced by plaintiffs were used by Pollitt Builders, Inc. to pay general invoices and operating costs, and none of the funds

were used by defendant for personal purposes.

On October 22, 1990, plaintiff Robert J. Bracco returned from New York to Ponte Vedra Beach, Florida, to check on the progress of the construction. He questioned the status of the company, at which time defendant stated that he was "going bankrupt."

Plaintiffs subsequently recovered a Rolex watch from defendant worth $3,000.00 and $5,500.00 from the proceeds of Pollitt Interiors, Inc.'s furniture store.

On November 27, 1990, defendant and Theressa D. Pollitt filed a chapter 7 petition. On the same day, Pollitt Builders, Inc. filed a separate chapter 7 case.

The evidence indicates that Theressa Pollitt was neither present at nor participated in any discussion with either of the plaintiffs concerning the contract. In fact her first contact with either of the plaintiffs did not occur until after construction efforts on the residence had ceased.

### Conclusions of Law

The fundamental goal of the Bankruptcy Code is to provide the honest debtor with a fresh start. *In re Gans*, 75 B.R. 474, 481 (Bankr.S.D.N.Y.1987). However, that policy must be tempered by the need to prevent dishonest debtors from using the law as a shield. *Id.* Accordingly, § 523 provides the circumstances under which certain debts will be excepted from a debtor's discharge. Subsection (a)(2) deals with money or credit obtained through fraudulent conduct and reads in relevant part:

(a) A discharge under ... this title does not discharge an individual debtor from any debt—

. . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

. . .

(A) false pretenses, a false representation, or actual fraud....

To succeed on a claim under this section, a creditor must prove the following:

(1) the debtor made a false representation with the purpose and intention of deceiving the creditor;

(2) the creditor relied on such representation;

(3) the reliance was reasonably founded; and

(4) the creditor sustained a loss as a result of the representation.

*In re Graham*, 122 B.R. 447, 450 (Bankr. M.D.Fla.1990); *In re Young*, 90 B.R. 521, 522 (Bankr.M.D.Fla.1988); *In re Hunter*, 780 F.2d 1577, 1579 (11th Cir.1986). The burden of proving each of the elements is on the party claiming the exception to discharge. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Podzamsky*, 141 B.R. 770 (Bankr.M.D.Fla. 1992).

In the instant case, the issue of the false representation centers around whether defendant's failure to inform plaintiffs of his and the company's precarious financial situation constituted a misrepresentation made with an intent to deceive.

Failure to disclose information may be characterized as a misrepresentation within the meaning of § 523(a)(2)(A). *In re Hunt*, 30 B.R. 425, 439 (M.D.Tenn.1983); *In re Weinstein*, 31 B.R. 804, 809–10 (Bankr. E.D.N.Y.1983). In addition, the Court can infer an intent to deceive from the totality of the circumstances. *In re Gans*, 75 B.R. 474, 486 (Bankr.S.D.N.Y.1987); *In re Rechichi*, 105 B.R. 726 (Bankr.S.D.Fla.1989).

In the proceeding at bar, the circumstances as a whole create an inference that defendant intentionally engaged in conduct designed to create a false position. The brief amount of time (less than two months) between defendant's promises to perform and actual default indicate that he was unable to perform at the time he accepted the advances and that he knew or should have known that he would not be able to fulfill his obligations under the contract.

Additionally, defendant's bank accounts show that at the time the advances were made he was probably insolvent. In fact, two days before the final two advance checks were received C & S froze the bank account. This event alone demonstrates that at the time the funds were received

from plaintiffs by defendant, he was not able to pay his bills as due.

The evidence presented by plaintiffs paints a picture of circumstances sufficient to support the conclusion that defendant's silence constituted a misrepresentation that was made with intent to deceive. The plaintiffs have met their burden with regard to the first element.

Plaintiffs have also proved that they relied on the impression that defendant gave of a solid, stable construction company. The testimony indicated that plaintiffs decided to contract with defendant based on his apparent reliability and that they would not have entered into the transaction had they known the true financial posture of defendant and his company.

Plaintiffs' reliance on defendant was reasonable. Plaintiffs had no reason to question the stability of defendant's finances at the time the advances were made. In fact, defendant had been recommended to plaintiffs by a local realty firm.

Having invested $50,000.00 in a building project for which they only received a set of plans, plaintiffs have sustained a loss as a result of the misrepresentation.

Having met their burden on all four of the necessary elements, plaintiffs have fulfilled the requirements of § 523(a)(2)(A). The evidence indicated that plaintiffs initially advanced a total of $50,000.00 to defendant. However, they received plans with a value $1,000.00, a Rolex watch worth $3,000.00, proceeds from furniture sales of $5,500.00, and services of defendant of $3,000.00. The balance of $37,500.00 shall be excepted from defendant's discharge.

A separate Judgment finding in favor of plaintiffs and against defendant will be entered.

## JUDGMENT

Upon the Findings of Fact and Conclusions of Law separately entered, it is

ORDERED:

1. Defendants' Motion to Dismiss the complaint as to defendant, Theressa D. Pollitt, is granted, and the proceeding is dismissed as to that defendant.

2. Judgment is entered in favor of plaintiffs, Robert J. and Lena F. Bracco, and against defendant, Frederick L. Pollitt, and the debt of $37,500.00 owed by defendant, Frederick L. Pollitt, to plaintiffs is excepted from his discharge.