**In re James R. GROGAN, III, Debtor.**

**The HAWTHORNE CORPORATION, Plaintiff**

v.

**James R. GROGAN, III, Defendant.**

**Bankruptcy No. 91–8807–8P1.
Adv. No. 91–675.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Oct. 5, 1992.

David Steen, Tampa, Fla., for debtor.

Larry Foyle, Tampa, Fla., for plaintiff.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

IN THIS Chapter 11 case the matter under consideration involves the saga of an "elephant roundup" combined with some

non-existing carousels and some helicopters which are not flying but are packed in boxes. The Complaint is filed by The Hawthorne Corporation (Plaintiff) and against James R. Grogan, III (Debtor) in which the Plaintiff contends that the debt owed by the Debtor to the corporation shall be excepted from the overall protection of the general bankruptcy discharge by virtue of § 523(a)(2)(A) and § 523(a)(6). The original Complaint set forth three counts based on § 523 and an additional separate count based on § 1141(d) of the Bankruptcy Code. This final Count was voluntarily dismissed by the Plaintiff prior to the commencement of the Final Evidentiary Hearing. This leaves for consideration the claims of nondischargeability as set forth in Counts I, II and III of the Complaint.

The facts which are relevant to the resolution of this adversary proceeding as established at the final evidentiary hearing are as follows:

At the time relevant the Plaintiff was the owner, trainer and supplier of circus and show animals. The Debtor was the sole stockholder of Grogan Productions, Inc., (Productions) which owned and operated an amusement park located at Wisconsin Dells in the State of Wisconsin, and Grogan Helicopters, Inc. (Grogan Helicopters), which at one time operated a helicopter ride business.

In September of 1989, the Debtor met John Cuneo (Cuneo), the principal of the Plaintiff, during a social visit to the Cuneo residence arranged by their respective wives. During the visit, the Debtor told Cuneo about an idea that he had for an "elephant roundup" show that would become the "hook" for his amusement park. Cuneo suggested to the Debtor that in order to stage a successful "elephant roundup," one needed large elephants, such as the ones owned by the Plaintiff.

Sometime later, the Debtor inquired if the Plaintiff's elephants could be booked for the "roundup" and asked if the Plaintiff would lend $250,000 to cover the initial set-up costs of the "elephant roundup." After negotiations, Cuneo agreed to supply the elephants, and to loan Productions $250,000 (Plaintiff's Exhibit 1). To memorialize the agreement the parties executed an agreement (Agreement) on March 2, 1990. The Debtor, on behalf of Grogan Helicopters, agreed to grant to the Plaintiff a first lien on all its helicopters, including three Bell 47 helicopters, certain helicopter parts, and shop equipment and tools. In addition, the Debtor agreed to grant the Plaintiff second mortgages on two homes owned by him. (Plaintiff's Exh. 1)

The Agreement recited that the estimated value of each of the three helicopters was $65,000; that the market value of the parts was $2,821,560; and that the estimated market value of the shop equipment and tools was $22,000. The only independent inquiry conducted by the Plaintiff regarding the values of the collateral offered consisted of a telephone call made by Cuneo to a friend who was the head of an airport, who told Cuneo that helicopters in good working condition are generally worth between $90,000 and $130,000 each. It appears that on the strength of this advice, the Plaintiff agreed to lend the $250,000.00 to Productions.

On the same day, the Debtor, as president of Grogan Helicopters and Productions, executed a promissory note in the principal amount of $250,000 in favor of the Plaintiff. (Plaintiff's Exh. 2) The note was guaranteed by the Debtor and his wife individually. (Plaintiff's Exh. 5). In connection with the loan, the Debtor, on behalf of Grogan Helicopters, signed a Security Agreement granting the Plaintiff a security interest in the helicopter parts, the inventory and equipment of Grogan Helicopters. (Plaintiff's Exh. 9). The parties also executed a UCC–1 Financing Statement regarding this collateral, although it is unclear whether the financing statement was ever filed. It is without dispute that the Debtor, on behalf of Grogan Helicopters, intended to grant the Plaintiff liens on the three helicopters described in the Agreement, although the record is unclear whether the documents creating the liens were ever executed or recorded with the FAA.

There is no question that the Debtor told the Plaintiff that Grogan Helicopters

owned the three Bell 47 helicopters, albeit it turned out that these helicopters were not in flyable condition but dismantled and packed up in boxes. It is further without dispute that at the time the Plaintiff lent the $250,000 to Grogan Helicopters and Productions, Grogan Helicopters owned the log books and plates for certain parts of the three helicopters, but not enough parts to assemble them and build even one airworthy helicopter. There is evidence in this record which shows that in 1990, even after purchasing additional parts, it would take 9 weeks to build out three helicopters. The Plaintiff concedes that Cuneo never asked to see the helicopters and never inquired whether the helicopters were in flyable condition.

The amusement park owned by the Debtor needed more funding in the spring of 1990, and sought and obtained an additional $23,000.00 from the Plaintiff. To evidence this loan, on May 15, 1990, the Debtor, acting again as president of Productions, and individually as "personal guarantor", executed a promissory note in favor of Cuneo, not in favor of this Plaintiff, in the total principal amount of $23,000. (Plaintiff's Exh. 7). In connection with this loan, the Debtor also executed a UCC–1 Financing Statement which described the collateral as a 1937 carousel identified by a specific serial number. The record does not reveal whether the Debtor ever signed a Security Agreement granting a security interest in favor of Cuneo or the Plaintiff in the carousel, or that the UCC–1 Financing Statement was ever filed with the Office of the Secretary of State.

Be that as it may, there is no dispute that the parties intended that this loan was to be secured by a 1937 carousel. It is interesting to note that the only reference to the Plaintiff on the documents accompanying this transaction is on the UCC–1 Financing Statement, and that Cuneo, the payee named in the note, is not a Plaintiff in this Adversary Proceeding. However, the Debtor admits in his answer that the loan was actually made by the Plaintiff.

According to Cuneo, the Debtor represented that the carousel which was to serve as collateral was located at the Dells amusement park. There is no question that there was a carousel located at the amusement park opposite the Debtor's office. However, the record is devoid of any evidence that the Debtor ever owned this particular carousel and it is admitted that the Debtor only leased this particular carousel. According to the Debtor, he intended to grant the Plaintiff a security interest in a nearly identical carousel which was supposed to have been in storage at that time. The Debtor claims that this carousel was stolen sometime in June, 1990, although the Debtor did not report the theft to the police until December 12, 1991. (Debtor's Exhibit 1). The Debtor never explained how would one steal a carousel, clearly not the way one shoplifts in a department store. It is without dispute that Cuneo never inspected the carousel in order to compare the serial numbers with the serial number on the financing statement and never asked to see proof of ownership regarding the carousel located at the amusement park located across the way from the Debtor's office. While the Debtor denies that he affirmatively represented to Cuneo that the carousel across from his office was owned by him, one could readily see how even a pointing gesture conveyed the idea that he in fact owned that particular carousel. It is without dispute that neither loans were repaid.

On July 8, 1991, the Debtor filed his Petition for Relief under Chapter 11 of the Bankruptcy Codes. Shortly thereafter the Plaintiff filed this adversary proceeding, contending (1) in Count I that the Debtor made false representations or committed actual fraud regarding the existence of the carousel which induced the Plaintiff to lend money to Grogan Helicopters and Productions; in Count II that the Debtor made false representations or committed actual fraud regarding the condition of the helicopters which induced the Plaintiff to loan money to Grogan Helicopters and Productions, and therefore these debts should be determined to be nondischargeable based on § 523(a)(2)(A) and (2). In addition the Plaintiff also contended in Count III that the debt owed by the Debtor is nondis-

chargeable because the Debtor committed willful and malicious injury to the Plaintiff's collateral, i.e., the helicopters, by disassembling them and selling the parts, and therefore the debt should be nondischargeable pursuant to § 523(a)(6). These subsections of § 523 provide as follows:

§ 523. Exceptions to discharge.

(a) A discharge under section 727, 1141, 1228(b), or 1328(b) of this title does not discharge an individual from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition ...

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity ...

▮ Initially, it is important to note that the overriding purpose of the Bankruptcy Code is to allow a debtor to have a "fresh start" by providing much-needed relief from the pressure and discouragement of pre-existing debt. *Lines v. Frederick,* 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970). It is universally recognized that the exceptions to discharge set forth in § 523 of the Bankruptcy Code are to be construed narrowly against a creditor and liberally in favor of the debtor. *See In re Hunter,* 780 F.2d 1577 (11th Cir.1986). It is beyond question that in order to establish an operating element of a claim of nondischargeability the burden of proof is on the Plaintiff. However, it is equally true that the standard of proof is no longer clear and convincing evidence, as set forth in *In re Hunter, supra,* rather it is the preponderance of evidence. *In re Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

▮ There is no question that the Plaintiff has failed to meet its burden of proof as to the claim set forth in Count III of its Complaint based on § 523(a)(6) of the Bankruptcy Code. There is not one scintilla of evidence in this record to warrant the finding that the three Bell helicopters were assembled at the time the Debtor obtained the loans from the Plaintiff. To the contrary, it is conceded by all that the helicopters were at all times relevant disassembled, stored in boxes and not airworthy. Although there is evidence that the Debtor sold some helicopter parts after the loan was made, there is no evidence that these sales were made to willfully injure the Plaintiff, or that the helicopter parts that were sold were needed to build out the Bell 47 helicopters.

▮ This leaves for consideration the claims set forth in Counts I and II of the Complaint, both based on § 523(a)(2)(A). To prevail under this Section, the Plaintiff must prove either actual fraud or that the Debtor obtained money by false pretenses or false representations. Actual fraud has been defined as the type of conduct involving moral turpitude or an intentional wrong. Fraud that is simply implied in law, and which may exist without the imputation of bad faith, is legally insufficient. *In re McAdams,* 11 B.R. 153 (Bankr.D.Vt. 1980). In order to prevail on a claim of nondischargeability based on a false representation, a Plaintiff must prove that: the debtor made a false representation with the purpose and intention of deceiving the creditor; the creditor relied on such representation; and the creditor sustained a loss as a result of the representation. *In re Marsowicz,* 120 B.R. 602 (Bankr.S.D.Fla.1990); *In re Black,* 113 B.R. 79 (Bankr.M.D.Fla. 1990).

▮ It should be noted that there is a split among the Circuits whether reliance under § 523(a)(2)(A) must be reasonable. *See e.g., In re Ophaug,* 827 F.2d 340 (8th Cir.1987). However, in this Circuit the reliance under § 532(a)(2)(A) must be reasonable. *In re Hunter, supra.*

▮ It is a generally established proposition that absent a duty imposed by law to disclose facts because of a special relationship of the parties or a showing that a debtor has willfully concealed or omitted material facts requested by a creditor, a mere silence and failure to disclose material facts falls short of the requirement of

the law to establish false representations. *In re Hunter, supra,* at 1580.

Although there is no question that the Plaintiff would not have made the $250,000.00 loan had he known that the helicopters were not in flyable condition, there is no evidence in this record which would support the finding that the Debtor made any affirmative false representation regarding the condition of the helicopters. Although it is hard to imagine that a reference to a helicopter would mean anything other than an assembled helicopter, there is evidence in the record that it is customary in the aviation industry to refer to disassembled helicopters as "helicopters" because helicopters are frequently stored in a disassembled state. Further, considering that the Plaintiff conducted absolutely no meaningful independent inquiry regarding the helicopters and other parts and inventory, this Court is satisfied that the Plaintiff did not rely on anything before the loan was granted. In this connection, it should be noted that the Plaintiff's contention that the Debtor intentionally concealed the helicopters' actual condition must be rejected. No special relationships existed between the parties which would have required the Debtor to disclose the actual status of the helicopters. In fact, there is no indication that the Debtor would not have revealed that the helicopters were not assembled had Cuneo asked.

The $23,000.00 loan is a horse of a different color. Clearly the Debtor pledged as collateral a carousel which he did not own at the time he obtained the $25,000.00 from the Plaintiff. The Debtor's contention that he did in fact own a carousel, albeit not the one in his amusement park, is plainly not believable and must be rejected. It is true that the Plaintiff's reliance on any statements that were made by the Debtor may not have been reasonable as Cuneo never conducted any independent inquiry regarding the collateral for the loan, but clearly one who pledges as collateral for a loan property which he does not own is guilty of at least fraud. Thus, this Court is satisfied that the Plain-

tiff has met its burden of proof on this Count.

A separate Final Judgment will be entered in accordance with the foregoing.