In re Harvey F. CRAM and
Faith Cram, Debtors.

Patricia MENDEZ, Plaintiff,

v.

Harvey F. CRAM and Faith
Cram, Defendants.

Bankruptcy No. 93–478–BKC–3P7.
Adv. No. 93–238.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Feb. 28, 1995.

John Stanton, Deland, FL, for plaintiff.

Richard Rosenberg, Deland, FL, for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This adversary proceeding came before the Court upon the complaint of plaintiff, Patricia Mendez, which seeks to except a debt from defendants' discharge pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4) and (a)(6). A trial was held on November 16, 1994, and upon the evidence presented the Court enters these findings of fact and conclusions of law:

### Findings of Fact

Plaintiff entered into a contract with C & C Homes, Inc. which provided that Wassau Homes would deliver a prefabricated home to plaintiff's property and C & C Homes, Inc., would do site work and assemble the home. Defendants, Harvey and Faith Cram, were the principal officers and shareholders of C & C Homes, Inc., which was an authorized dealer for Wassau homes.

Plaintiff paid C & C Homes, Inc., $36,-551.14 for the site work and assembly of her home. All the payments made by plaintiff were deposited into the C & C Homes, Inc., bank account and were used to pay corporate expenses. Defendants had one business checking account in which they deposited all income from the business and out of which they paid all business expenses. Defendant, Faith Cram, was responsible for accounts payable and receivable. Testimony presented at trial indicated that maintaining one account for all business dealings is common practice for builders of this size.

Defendants did not have a contractor's license, thus they employed Warren Harding as contractor for C & C Homes, Inc.'s, jobs. Warren Harding had defendants execute a document dated December 18, 1992, which states:

Dear Mr. Harding,

The following statement is to hold you free from all incumberances [sic], liabilities, and warranties in regards to the residence at 2410 Dahlia Street, Deland Florida. (Daytona Park Estates). This residence was built by contract with a customer named Patricia L. Mendez, myself, Harvey Cram, and my wife Faith Cram DBA C & C Homes, Inc.

Also, by this statement we declare all bills have been paid and acknowledge your part in this venture with us and Wassau Homes, was of supervisory nature only, and pull required building permits.

Gayle Harding testified that defendants did not sign this document until two to three weeks after its date. Plaintiff received a copy of this document in mid-January, 1993, from Warren Harding.

Prior to receiving a copy of the December 18, statement, on December 19, 1992, plaintiff made a final payment of $10,111.14 to C & C Homes, Inc., for her home. Plaintiff testified that she asked defendants at that time whether all bills for the work on her home had been paid and that defendants assured her that all bills had been paid. Plaintiff testified further that had she known the facts were otherwise she would not have made the final payment.

Contrary to what defendants told plaintiff on December 19, all the bills for the work on her home had not been paid, and on January

19, 1993, two claims of lien were filed against the property. A claim of lien was filed by Dunn Corporation in the amount of $3,103.69 for materials or services supplied between November 11, 1992, and December 7, 1992, and by Tyler Concrete in the amount of $8,333.00 for labor and materials supplied from October 28, 1992, until December 15, 1992. Dunn Corporation filed suit against plaintiff in state court to collect the lien amount.

Defendants testified that they were counting on a $12,000.00 payment from another contract to pay these two suppliers and when that contract fell through in late December defendants were unable to pay the amounts due. Four contracts for site work to be performed by C & C Homes, Inc., were canceled by the purchasers between September, 1992, and March, 1993.

### Conclusions of Law

Plaintiff's complaint states that it is brought pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4) and (a)(6), however, the complaint does not contain any allegation regarding willful and malicious injury under § 523(a)(6), thus the Court will consider only § 523(a)(2)(A) and (a)(4) in this proceeding.

The fundamental goal of the bankruptcy code is to provide an honest debtor with a fresh start. *In re Pollitt,* 145 B.R. 353 (Bankr.M.D.Fla.1992). However, there are circumstances under which some debts may be excepted from a debtor's discharge. *Id.* These exceptions are contained in § 523.

### 11 U.S.C. § 523(a)(2)(A)

Section 523(a)(2)(A) states in relevant part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

To establish that a debt should be excepted from discharge under § 523(a)(2)(A) plaintiff must establish the following four items:

(1) the debtor made a false representation with the purpose and intention of deceiving the creditor;

(2) the creditor relied on such representation;

(3) the reliance was reasonably founded; and

(4) the creditor sustained a loss as a result of the representation.

*In re Hunter,* 780 F.2d 1577, 1579 (11th Cir.1986); *In re Pollitt,* 145 B.R. 353. Plaintiff has the burden to show each of these elements by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

Plaintiff argues that defendants induced plaintiff to make the $10,111.14 payment by stating that all bills had been paid when in fact there were amounts owed to Tyler Concrete and Dunn Corporation. Defendants argue, to the contrary, that at the time the statement was made it was true because no liens had been filed against the property and all bills were paid. Thus the Court must determine whether defendants' knowledge that the bills would be due, if they were not due at the time of the final payment, constitutes a misrepresentation pursuant to § 523(a)(2)(A).

Failure to disclose information may be characterized as a misrepresentation within the meaning of § 523(a)(2)(A). *In re Pollitt,* 145 B.R. 353. In addition, making statements with reckless disregard for the truth or falsity of the statement amounts to a misrepresentation under § 523. *Birmingham Trust National Bank v. Case,* 755 F.2d 1474 (11th Cir.1985); *In re Black,* 113 B.R. 79 (Bankr.M.D.Fla.1990). Direct evidence of intent is rarely available, thus the Court may infer intent to deceive from all the circumstances in a case. *In re Pollitt,* 145 B.R. 353.

Defendants testified that they intended to pay the lienors with funds from another contract which subsequently canceled. Although defendants may not have had invoices from the two lienors who finished working on plaintiff's home 12 days and 4 days prior to

plaintiff's inquiry about the bills, defendants' testimony indicates that defendants knew the amounts owed these two suppliers were outstanding on December 19. The Court finds that defendants' statement that the bills related to plaintiff's house were paid was made without regard to its truth or falsity, in reckless disregard for the truth and constitutes a misrepresentation under § 523(a)(2)(A).

Defendants also testified that they were desperately trying to keep their business going and that they needed funds at the time they received the final payment from plaintiff. The Court finds that defendants told plaintiff that the bills had been paid so plaintiff would continue to believe that C & C Homes, Inc., was financially sound. Thus plaintiff has established that defendants' statement concerning the payment of bills was made with the intent to deceive.

Plaintiff testified that she would not have made the final $10,111.14 payment if she had known that there were bills outstanding on the work. This is supported by plaintiff's questioning defendants about the status of the bills and liens prior to making the payment. The fact that plaintiff then made the final payment indicates that she relied upon defendants answer.

Plaintiff's reliance was reasonable. Plaintiff and defendants had a cordial business relationship and the work on her home was satisfactorily completed, thus plaintiff had no reason to doubt defendants and her reliance was reasonable.

■ The final element plaintiff must establish is damage caused by defendants' misrepresentation. The two liens which were filed against the property total $11,436.69. Plaintiff has suffered damage to the extent of the lien amounts which must be paid to release the liens.

■ Defendants argue that plaintiff failed to pierce the corporate veil and that plaintiff's relationship with defendants was solely through the corporation, C & C Homes, Inc. This does not alter the outcome under § 523(a)(2)(A). Money or property need not be obtained for the debtor personally, if an officer of a corporation has obtained money or property for the corporation through fraud the corporate form will not shield him. *In re Langworthy,* 121 B.R. 903 (Bankr. M.D.Fla.1990); *In re Jones,* 176 B.R. 629 (Bankr.M.D.Fla.1995).

Finally, defendants rely upon *Blackwell v. Dabney,* 702 F.2d 490 (4th Cir.1983) to support their argument that an oral statement concerning the financial condition of the corporation does not state a cause of action pursuant to § 523(a)(2)(A). The Eleventh Circuit has not adopted this rule nor does this Court. Plaintiff does not present allegations pursuant to § 523(a)(2)(B), thus the Court need not address defendants' arguments concerning the written statement from Mr. Harding.

### 11 U.S.C. § 523(a)(4)

■ In her complaint, plaintiff alleges that defendants embezzled funds, but in her brief plaintiff argues that defendants' actions amount to defalcation. The Court will address each of these points. Section § 523(a)(4) states in relevant part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

■ To establish defalcation under § 523(a)(4) plaintiff must establish that an express or technical trust exists between the parties which predates the wrongful conduct. *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934); *In re Quaif,* 4 F.3d 950 (11th Cir.1993); *In re Wiles,* 166 B.R. 975 (Bankr.M.D.Fla.1994). The relationship between a corporate officer and the corporation's creditors is not sufficient to establish the fiduciary relationship required by § 523(a)(4). *In re Nayee,* 99 B.R. 90 (Bankr.M.D.Fla.1989); *In re Wing,* 96 B.R. 369 (Bankr.M.D.Fla.1989).

Plaintiff has failed to establish any relationship between plaintiff and defendants other than the relationship of corporate officer to corporate creditor. This is not sufficient to establish a fiduciary relationship within the meaning of § 523(a)(4).

Embezzlement is defined for purposes of § 523(a)(4) as "the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." *In re Wiles*, 166 B.R. 975, 980 (Bankr.M.D.Fla. 1994); *In re Kelley*, 84 B.R. 225, 231 (Bankr. M.D.Fla.1988). To establish that funds have been embezzled plaintiff need not establish a fiduciary relationship but must show fraud or fraudulent intent. *Id.; In re Pickett*, 150 B.R. 812 (Bankr.M.D.Fla.1992).

The Court has previously held that defendants' statement that all bills had been paid at the time plaintiff made the final payment on her home was made with the intent to deceive plaintiff. Thus, plaintiff has established the necessary fraudulent intent under § 523(a)(4), and that the $11,436.69 debt owed by defendants to plaintiff is excepted from defendants' discharge pursuant to § 523(a)(4).

The Court will enter a separate order consistent with these findings of fact and conclusions of law.