In re Raymond C. BURNETT, d/b/a
Fly High Farms, Debtor.

BARNETT BANK OF MARION
COUNTY, N.A., Plaintiff,

v.

Raymond C. BURNETT, d/b/a Fly
High Farms, Defendant.

Bankruptcy No. 89–2033–BKC–3P7.
Adv. No. 90–185.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

July 22, 1991.

Aaron R. Cohen, Keystone Heights, Fla.,
for defendant.

Ronald Bergwerk, Jacksonville, Fla., for
plaintiff.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy
Judge.

This proceeding came before the Court
upon complaint of Barnett Bank of Marion
County, N.A., seeking to except three debts
from discharge pursuant to 11 U.S.C.
§ 523(a)(2)(B). A trial was held on May 8,
1991, and upon the evidence presented, the
Courts enters the following Findings of
Fact and Conclusions of Law:

#### Findings of Fact

Defendant Raymond C. Burnett is a commercial airline pilot who also owned and
operated a thoroughbred horse farm
known as Fly High Farms in Marion County, Florida. He filed his Chapter 11 bankruptcy petition on July 18, 1989. The case
was converted to Chapter 7 on May 7, 1990.

Defendant began banking with plaintiff
in 1981. Between 1986 and 1989 plaintiff

made, renewed, and consolidated numerous loans with defendant.

The first loan was made on October 30, 1986, for $124,075.91. The loan was renewed on May 11, 1987, and September 2, 1988.

The second loan was made on April 20, 1987, for $95,165.30. This loan was renewed on May 11, 1987, and September 2, 1988.

On November 18, 1988, the two loans were renewed and consolidated into one $165,000 note secured by thoroughbred race horses. Post-petition the horses were sold, leaving an unsecured balance of $70,-288.54.

On the petition date, the defendant, in addition to the secured loan, had two unsecured loans with plaintiff for $60,000 and $15,072.65.

Over the course of the lending relationship, plaintiff required that defendant furnish to it personal financial statements. The most recent statements are dated September 20, 1986; July 15, 1988; and April 15, 1989. Each statement varies considerably from the financial information provided in defendant's bankruptcy schedules dated September 8, 1989.

| Statement | Assets | Liabilities | Net Worth |
|---|---|---|---|
| September 20, 1986 | 2,889,450 | 710,700 | 2,178,750 |
| July 15, 1988 | 2,599,100 | 640,300 | 1,958,800 |
| April 15, 1989 | 2,455,100 | 756,500 | 1,698,600 |
| Bankruptcy Schedule | 1,253,800 | 1,358,745 | –71,945 |

In making the decision to authorize new and renewal loans to defendant, plaintiff's loan officer considered both defendant's financial position and the longstanding satisfactory relationship with the bank. The loan officer also evaluated the financial statements provided by defendant in assessing his creditworthiness before renewing or extending credit.

Defendant significantly understated his liabilities on the financial statements provided to plaintiff. Plaintiff's loan officer testified that had he been aware of the additional debts, he would not have authorized new loans nor would he have renewed the existing obligations.

Plaintiff from time to time verified defendant's income through his W–2 tax forms; however, because he was not a new borrower, the representations made in his financial statements were not investigated.

The issue before the Court is whether the financial statements contained material misrepresentations concerning defendant's financial condition on which plaintiff reasonably relied and which defendant published with an intent to deceive.

### Conclusions of Law

11 U.S.C. § 523(a)(2)(B) provides in relevant part:

(a) A discharge under ... this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive....

■ The creditor seeking a judgment of nondischargeability bears the burden of proof through a preponderance of the evidence. *Grogan v. Garner*, —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ First, more than a mere inaccuracy in the writing must be proven, the plaintiff must show a "material falsity." *In re Wing*, 96 B.R. 369, 372 (Bankr.M.D.Fla. 1989). The evidence indicates that the defendant not only significantly understated his liabilities, but also exaggerated his assets. This Court has held that such inaccuracies in a financial statement are suffi-

cient to support a finding that it is materially false. *Id.*

The personal financial statements that defendant supplied to plaintiff clearly concerned his financial condition thus, the second condition of § 523(a)(2)(B) has been met.

The next element that must be considered is whether the plaintiff reasonably relied on the financial statements. This Court addressed facts similar to these in *In re Ogden,* 119 B.R. 277 (Bankr.M.D.Fla. 1990). In that case the bank renewed and consolidated six notes based on financial statements that were over nine months old. Like the case at hand, the parties had a long term relationship, the bank conducted minimal investigation, and the bank did not verify the statements. In concluding that the debt was dischargeable this Court stated:

> Where a bank relies on stale financial statements and never inquires as to whether the statements actually reflect the debtor's current financial situation, the bank fails to show reasonable reliance.

*Id.* at 279. *In re Wing,* 96 B.R. at 373.

Similarly, this Court has found that reliance on financial statements four to six months old without an attempt to verify the contents is unreasonable. *In re Benore,* 108 B.R. 797, 799 (Bankr.M.D.Fla. 1989).

■ The testimony clearly shows that the plaintiff used financial statements up to one and a half years old in assessing its decision to extend additional credit to defendant. Reliance on such stale documents is unreasonable.

In addition, plaintiff took no steps to verify the information contained in the statements. Failure to check the accuracy of financial statements constitutes unreasonable reliance and precludes relief under § 523. *In re Duncan,* 35 B.R. 323, 325 (Bankr.W.D.Ky.1983).

■ The final element, intent to deceive, can be inferred from the surrounding circumstances. *In re Wing,* 96 B.R. at 372. "[W]here a person knowingly or recklessly makes a false representation which the person knows or should know will induce another to make a loan, intent to deceive may be logically inferred." *Id.* at 373.

In the case at hand, defendant misstated his assets and liabilities and should have known how the misrepresentations would impact on plaintiff's decisions. Accordingly, the inference arises that he intended to deceive plaintiff when he made the financial statements.

Having proven that defendant made a materially false written statement regarding his financial condition with intent to deceive, plaintiff satisfied three elements of § 523(a)(2)(B). However, plaintiff failed to meet its burden on the fourth element, reasonable reliance on the statements, and thus cannot prevail.

Pursuant to 11 U.S.C. § 523(a)(2)(B), the following three debts owed by defendant to plaintiff are covered by the discharge: a) the remaining principal of $70,288.54 due on the loan secured by horses; b) the principal balance of $60,000 due on the unsecured loan; and c) the principal balance of $15,072.65 due on the unsecured stud fee loan.

A separate Final Judgment in favor of the defendant will be entered.