In re Jerry Lee FLOYD and Michelle Lorita Floyd, Debtors.

Neil O'DONNELL, Plaintiff,

v.

Jerry Lee FLOYD and Michelle Lorita Floyd, Defendants.

Bankruptcy No. 91–4721–BKC–3P7.
Adv. No. 91–322.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Feb. 5, 1995.

John Tucker, Jacksonville, FL, for plaintiff.

Hugh Davenport, Jacksonville, FL, for debtors/defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This adversary proceeding is before the Court upon the complaint filed by plaintiff, Neil O'Donnell seeking to except a debt from defendants' discharge pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(2)(B). A trial was held October 20, 1994, and upon the evidence presented the Court enters these findings of fact and conclusions of law:

### Findings of Fact

During the mid 1980's, plaintiff and defendant, Jerry L. Floyd, formed a joint venture, Gulfstream Construction of Ponte Vedra, Inc. Plaintiff was the principal financier of the operation and did most of the office work while defendant, Jerry L. Floyd, supervised the construction of homes primarily because he held a contractor's license. The joint venture was formed to act as franchisee of Arthur Ruttenburg Homes, Inc. At the time the parties formed the joint venture both plaintiff and defendant operated their own wholly owned corporations separately.

On February 1, 1985, and again on February 21, 1985, plaintiff wrote defendants two checks in the amount of $25,000.00. The checks were made out to defendants individually but were endorsed by both defendants for Floyd and Lee Construction, Jerry L. Floyd's wholly owned company. Defendants gave plaintiff a note secured by a mortgage on defendants' home. The mortgage was

executed February 22, 1985, and was recorded on March 7, 1985. Defendants and plaintiff executed an additional note and mortgage on November 10, 1986, which was recorded on May 7, 1987.

Between the time defendants executed the first note and mortgage in favor of plaintiff and the time they gave plaintiff the second note and mortgage, defendants received a $300,000.00 loan from Great Western Bank which was also secured by their residence. In addition to the Great Western loan, in January, 1987, defendants received a $39,000.00 line of credit from Southeast Bank which was secured by a second mortgage on defendants' home.

In January, 1989, defendant Jerry Floyd informed plaintiff that defendants were going to refinance the mortgage on their home and that refinancing would provide the funds to repay plaintiff. Defendant, Jerry Floyd, stated, however, that in order to refinance their home defendants needed plaintiff to execute a satisfaction of mortgage. Defendant, Jerry Floyd, told plaintiff that he anticipated the closing would take place on February 14, 1989, and provided plaintiff with a check dated February 14, 1989, for $50,000.00. On February 6, 1989, plaintiff executed a satisfaction for the February 22, 1985, mortgage. The satisfaction was recorded the same day.

When the closing did not take place on February 14, 1989, defendant provided plaintiff with a copy of the loan application for the refinancing.

The closing took place February 23, 1989. Defendants received $33,941.29 from the refinancing.

On February 24, 1989, defendant, Jerry L. Floyd, called plaintiff and asked for the execution of a second satisfaction of mortgage. This satisfaction was for the November 10, 1989, mortgage. At that time plaintiff asked defendant when the closing would take place, defendant told plaintiff that the closing had been delayed again. In response to defendant's request, plaintiff executed a satisfaction of mortgage for the November 10, 1986, mortgage which was recorded March 3, 1989.

After executing the second satisfaction and having failed to receive payment from defendants, plaintiff called defendants several times to inquire about the closing. Initially, defendant, Jerry L. Floyd, told plaintiff the closing continued to be delayed; later defendant simply stopped returning plaintiff's calls.

On March 15, 1989, plaintiff cashed defendant's $50,000.00 check, but the check was returned due to insufficient funds.

Also in early 1989, the plaintiff and defendant, Jerry Floyd, determined that the work volume required only one to run the Arthur Ruttenburg franchise. Plaintiff and defendant began negotiations to dissolve the joint venture. On March 2, 1989, defendant, Jerry Floyd, sold his interest in the business to a new company formed by plaintiff. The bill of sale for the assets of the joint venture from defendant to plaintiff contains a release of any claims against plaintiff.

Plaintiff filed suit in state court to recover the $50,000.00 he loaned defendants, but the suit was stayed by the bankruptcy case filing of Gulfstream Corporation.

The Court ruled at trial that the evidence was insufficient to support plaintiff's allegations that defendant, Jerry L. Floyd, acted at all times as his wife, Michelle L. Floyd's, agent. The Court also ruled that the evidence was not sufficient to support a finding of misrepresentation, false pretenses or actual fraud or that defendant, Michelle Floyd, participated in publishing a financial statement with the intent to deceive. The issues which remain before the Court pertain only to defendant, Jerry L. Floyd.

### Conclusions of Law

Initially, plaintiff renews its argument that defendant, Jerry L. Floyd, acted as agent for defendant, Michelle L. Floyd. Plaintiff cites *Chase v. Sullivan,* 99 Fla. 202, 126 So. 359 (1930) in support of its argument

that because of this agency the Court should except the debt owed plaintiff from both defendants' discharge.

The Court reaffirms the ruling that the evidence presented was not sufficient to establish that defendant, Jerry L. Floyd, was acting as his wife's agent because there was no evidence presented that defendant, Michelle Floyd, authorized her husband's actions or consented to his actions in obtaining the satisfactions of mortgage from plaintiff. *Cleckner v. Republic Van & Storage Co., Inc.*, 556 F.2d 766 (5th Cir.1977) (wife's acquiescence in arrangement to move household goods made by husband allows third party to rely on husband as agent of wife)[1]; *See also, In re Warsh*, 29 B.R. 841 (Bankr. M.D.Fla.1983) (wife at least impliedly authorized husband to act as agent where wife received at least 22 statements reflecting husband's sale of stock held in wife's name, permitted the indebtedness secured by the stock to be reduced and failed to report any dividend from the stock on her income tax returns).

In this case there was evidence that defendant did not have full knowledge of her husband's actions; indeed Michelle Floyd testified that had she known that her husband had given plaintiff the $50,000.00 check she would not have agreed and defendant, Jerry Floyd, testified that he did not inform his wife of all financial transactions because it created problems between them. Thus the evidence indicates that defendant, Jerry Floyd, was not acting as his wife's agent as she did not have full knowledge of or consent to this actions, and plaintiff did not establish that defendant, Jerry Floyd, was acting as his wife's agent. Consequently, plaintiff's reliance on *Chase* is not well founded, and the Court reiterates its holding that plaintiff did not present evidence sufficient to sustain its burden under § 523(a)(2)(A) or (a)(2)(B) as to defendant, Michelle L. Floyd.

### § 523(a)(2)(A)

■■■ Plaintiff seeks to except the $50,-000.00 debt from defendant, Jerry L. Floyd's

[hereinafter "defendant"] discharge pursuant to 11 U.S.C. § 523(a)(2)(A). That section states in relevant part:

(a) A discharge under section 727, 1141, 1128[a] 1128(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

To prevail under § 523(a)(2)(A), plaintiff must establish that:

(1) debtor made a false representation with the purpose and intention of deceiving the creditor;

(2) creditor relied on such representation;

(3) the reliance was reasonably founded; and

(4) the creditor sustained a loss as a result of the representation.

Plaintiff has the burden of proving each of these elements by the preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Pollitt*, 145 B.R. 353 (Bankr.M.D.Fla.1992).

■■■ For plaintiff to establish his claim, he must show that defendant is guilty of positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality. *In re Hunter*, 780 F.2d 1577 (11th Cir.1986). Direct evidence of intent is not necessary, however, because it is rarely available, rather the Court may infer intent to deceive from the totality of the circumstances in a case. *In re Pollitt*, 145 B.R. 353. The willful concealment or omission of material facts or intentional statements of half-truths may constitute actual fraud. *Id.; In*

---

**1.** In *Bonner v. Prichard*, 661 F.2d 1206 (11th Cir.1981), the Eleventh Circuit adopted the pre-cedent of the former Fifth Circuit.

*re Langworthy,* 121 B.R. 903 (Bankr. M.D.Fla.1990). In addition, the representation must be as to current or past facts because a mere promise to be executed in the future is not sufficient to make a debt non-dischargeable, even though there is no excuse for the subsequent breach of the promise. *In re Bercier,* 934 F.2d 689 (5th Cir. 1991); *In re Selby,* 165 B.R. 300, 303 (Bankr. S.D.Fla.1994).

■ Plaintiff argues that debtor made a false representation sufficient to except the debt owed plaintiff from defendant's discharge when he told plaintiff that the refinancing would provide sufficient funds to repay plaintiff. However, the initial satisfaction of mortgage was obtained from plaintiff based upon defendant's representation about an event that was to occur in the future, that is the proposed refinancing of the home and closing of a new loan. Thus any representation as to that event cannot support a finding of actual fraud or false pretenses.

With regard to the second satisfaction of mortgage, obtained the day after the closing, defendant intentionally made statements as to current or past facts which were untrue. When defendant called plaintiff to ask whether plaintiff would execute the second satisfaction of mortgage, in response to plaintiff's inquiry, defendant told plaintiff that the closing had yet to occur. Clearly, defendant did not inform plaintiff that the funds due from the closing would not be sufficient to pay plaintiff. Considering defendant's purpose, to obtain the satisfaction of mortgage and defendant's failure to reveal that the closing had taken place and the insufficiency of the funds, the Court finds that defendant made a false representation with the intent to deceive plaintiff.

Defendant argues that he was not obligated to pay plaintiff until a full accounting between the parties had taken place. The Court does not find that this was a condition precedent to payment of plaintiff. An accounting, which may have reduced the amount owed plaintiff is inconsistent with defendant's giving plaintiff a check prior to executing the second satisfaction of mortgage and also conflicts with the bill of sale for the assets of the joint venture. In addition, defendant was not a credible witness, thus plaintiff has shown that defendant misrepresented facts with the intent to deceive plaintiff.

Plaintiff also established that he reasonably relied upon defendant's statements. Plaintiff executed two satisfactions of mortgage at defendant's request. The second satisfaction was executed after defendant assured plaintiff that the closing had not yet taken place and after receiving a check in the loan amount from defendant. Thus plaintiff relied upon defendant's representations as to when the closing would occur and defendant's ability to repay plaintiff after the loan was closed.

In addition, plaintiff's reliance was reasonable. Plaintiff and defendant had worked together for many years and were also social friends. Based upon their close business and personal relationship, the Court finds that plaintiff's reliance on the representations made by defendant with regard to the satisfaction of the November 10, 1985, mortgage was reasonable.

The false representations made by defendant and plaintiff's reliance upon them damaged defendant. Prior to executing the second satisfaction of mortgage, the November 10, mortgage stood in second position behind the February 23, Great Western mortgage. After defendant induced plaintiff to execute the second satisfaction of mortgage, plaintiff no longer had collateral to secure his claim.

Defendant valued his principal residence in schedule A of his bankruptcy schedules and in the Great Western loan application at $500,000.00. No other evidence of value was presented, and the Court accepts this valuation. Prior to releasing his security, plaintiff was oversecured [2], thus executing the second satisfaction of mortgage damaged plaintiff to the full amount of the loan.

**2.** Subtracting the February 23, Great Western

loan amount of $381,000.00 from the value of the

Finally, plaintiff argues that defendant used the funds from the refinancing to pay personal debts while defendant argues that the funds went into his business. It is unnecessary for the Court to resolve this dispute, because it not necessary that the property or money obtained be procured for the debtor himself, if he is an officer of a corporation and has obtained money or property for the corporation through fraud, he will not be shielded by the corporate form. *In re Langworthy*, 121 B.R. 903, 907. Consequently, the $50,000.00 debt owed by defendant to plaintiff will be excepted from defendant, Jerry L. Floyd's discharge.

### § 523(a)(2)(B)

 Plaintiff also seeks to except the $50,000.00 debt from defendant's discharge under § 523(a)(2)(B). Plaintiff argues that defendant's giving him the Great Western loan application when the closing was delayed constitutes the use of a materially false writing sufficient to except the $50,000.00 from discharge under § 523(a)(2)(B). Section 523(a)(2)(B) states in relevant part:

(a) A discharge under section 727, 1141, 1128[a] 1128(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—

(B) use of statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;

Again, plaintiff must prove each of these elements by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Miller*, 39 F.3d 301 (11th Cir.1994); *In re Pollitt*, 145 B.R. 353.

This Court has held that material falsity requires more than mere inaccuracy, but significant understatement of liabilities and exaggeration of assets constitutes material falsity. *In re Burnett*, 129 B.R. 299 (Bankr. M.D.Fla.1991) citing *In re Wing*, 96 B.R. 369 (Bankr.M.D.Fla.1989).

In this case, defendant listed real estate on the loan application which was owned by defendant, Michelle L. Floyd's mother, inflated the value of another piece of property and underestimated the amount of liens on their home. In the loan application defendants valued a piece of Georgia real estate at $40,000.00, but reported it in schedule A of their bankruptcy schedules as $2,000.00. Defendants also reported that the home was subject to $294,000.00 in liens when in fact it was subject to $335,529.85 worth of liens.

Defendants explained that the difference in valuation between the loan application and their bankruptcy schedules was due to the downturn in the real estate market and the bankruptcy of the developer of the Georgia property. However, defendants did not explain the inclusion of property that they did not own or the approximately $42,000.00 understatement of liens against their home. Given these facts, the Court holds that the loan application was materially false and plaintiff has established the first element under § 523(a)(2)(B).

The loan application clearly concerned defendants' financial condition so the second element of § 523(a)(2)(B) has been met.

This Court has held that when a bank relies on stale financial information or fails to inquire whether the statements reflect defen-

defendant's residence leaves $120,000.00 to secure plaintiff's $50,000.00 note. Had plaintiff refused to release the November 10, 1985, mortgage his lien would be in second position and the

Christopher Investment Corporation mortgage reflected in schedule A would not affect the amount of plaintiff's security.

dant's financial condition, reliance upon the statement is not reasonable pursuant to § 523(a)(2)(B). *In re Burnett,* 129 B.R. 299 (one and one-half years old); *In re Benore,* 108 B.R. 797 (Bankr.M.D.Fla.1989) (four to six months old).

In this case, the information provided in the loan application was current when defendant gave it to plaintiff. However, plaintiff did not inquire concerning the information contained in the statement to determine whether it accurately reflected defendant's financial condition. In addition, given the parties close relationship, the Court finds that plaintiff relied on this relationship with defendant in extending credit by executing the second satisfaction of mortgage and did not rely on the loan application in deciding whether to execute the satisfaction. Because plaintiff failed to establish reasonable reliance pursuant to § 523(a)(2)(A), his claim under that section fails.

The Court will enter a judgment consistent with these findings of fact and conclusions of law.

### *JUDGMENT EXCEPTING DEBT OF DEFENDANT JERRY LEE FLOYD FROM DISCHARGE AND DISCHARGING DEBT OF DEFENDANT MICHELLE LORITA FLOYD*

Upon findings of fact and conclusions of law separately entered, it is

ORDERED

1. Judgment is entered in favor of plaintiff, Neil O'Donnell, and against defendant, Jerry L. Floyd.

2. The debt of $50,000.00 owed by defendant, Jerry L. Floyd, to plaintiff, Neil O'Donnell, is excepted from defendant, Jerry L. Floyd's, discharge with interest to accrue at the legal rate of 7.34% per annum for all which let execution issue.

3. Judgment is entered in favor of defendant, Michelle Lorita Floyd, and the debt. in the amount of $50,000.00 owed by defendant, Michelle Lorita Floyd, to plaintiff, Neil O'Donnell, is discharged.