In re T. David BRATCHER, Debtor.

William L. Posillico, Plaintiff,

v.

T. David Bratcher, Defendant.

Bankruptcy No. 01–5249–3F7.
Adversary No. 01–265.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

May 21, 2002.

Jacob A. Brown, Jacksonville, FL, for Plaintiff.

Robert Zipperer, Daytona Beach, FL, for Debtor.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This proceeding is before the Court upon Plaintiff's Motion for Summary Judgment as to Counts I, II, and III of the adversary complaint (the "Motion"). Based upon the evidence presented in support of the Motion, the Court makes the following Findings of Fact and Conclusions of Law in accordance with Fed. R. Bankr. 7052.

### FINDINGS OF FACT

In October 1998 Defendant solicited Plaintiff's participation and involvement in a business venture to manufacture and distribute Sun Tunnel skylights. In connection with forming the business venture

and pursuing the Plaintiff as a potential investor/business partner, Defendant repeatedly represented that he was capable of and would contribute capital to the business venture. These representations were false. On November 30, 1998 Plaintiff loaned $5,000.00 to Defendant and $6,000.00 to Island Design.[1] On December 15, 1998 Plaintiff loaned an additional $468.00 to Defendant. In making these loans, Plaintiff relied on Defendant's oral representations.

On January 18, 1999 Defendant issued a signed financial statement representing total assets of $516,397.57 and total liabilities of $67,506.00, for a net worth of $448,891.57. Defendant certified that the information contained in the statement was true and correct. The January 18, 1999 financial statement also indicated that Defendant's monthly income was $7,866.00, including wages of $6,666.00 and trust income of $1,200.00. However, the Defendant's Statement of Affairs in the underlying bankruptcy case provides that Defendant had no income in 1999. In his bankruptcy schedules Defendant listed total liabilities of $486,232.71, of which $393,000.00 is owed to Defendant's relatives or relatives of his long-time girlfriend. These liabilities are not listed in Defendant's January 18, 1999 financial statement.

On February 2, 1999 Plaintiff loaned $85,590.00 to Defendant. On February 4, 1999 Plaintiff loaned $1,000.00 to Defendant. In making these loans, Plaintiff relied on Defendant's oral representations as to his capability to contribute to the business venture and on the January 18, 1999 financial statement.

On or about March 5, 1999 Plaintiff and Defendant incorporated Island Design, Inc. ("Island Design") in the state of South Carolina. Plaintiff and Defendant were the only shareholders in Island Design, each having a fifty percent (50%) ownership interest. Defendant also served as an officer and director of Island Design at all pertinent times. Island Design became a regional distributor and installer of Sun Tunnel skylights.

On March 19, 1999 Defendant issued a second financial statement representing total assets of $461,650.00 and total liabilities of $67,506.00, for a net worth of $394,144.00. Defendant certified that the information contained in the statement was true and correct.

On or about June 7, 1999 Island Design received a revolving loan from Upper Savannah Council of Governments ("Upper Savannah") for the purpose of expanding its business. Sam Leaman, Upper Savannah's representative, testified that Upper Savannah relied on Defendant's financial statements in making the loan. As part of the financing, Island Design issued a promissory note, which was guaranteed by both Plaintiff and Defendant, in favor of Upper Savannah in the amount of $150,000.00. Plaintiff relied on Defendant's financial statements in guaranteeing the promissory note in favor of Upper Savannah. Shortly thereafter, Island Design received a $75,000.00 advance on the revolving loan. Plaintiff wrote himself a check for $75,000.00 from Island Design as repayment toward the $85,590.00 loan made on February 2, 1999.

On June 9, 1999 Plaintiff loaned an additional $25,000.00 to Defendant. On June 11, 1999 Plaintiff loaned $15,000.00 to Island Design. In making these loans,

---

1. Plaintiff issued a check to Island Design with the memo section indicating the money was for "product". However, Island Design, Inc. was not incorporated until March 5, 1999.

Plaintiff relied on Defendant's financial statements.

Defendant owned a collection of black pearls, which he valued at $125,000.00 on his financial statements. Defendant pledged the pearl collection as collateral for the $85,590.00 and $25,000.00 loans from Plaintiff. Defendant testified that he pawned his pearl collection but has no records or accounting of such pawning or the proceeds thereof. Defendant did not list the pawning of his pearl collection on either of his financial statements or as a transfer under Question 10 of his Statement of Affairs.

On January 7, 2000 Plaintiff and Defendant entered into an agreement (the "Stock Purchase Agreement") pursuant to which Defendant agreed to (a) pay $57,000.00 and provide certain inventory to Plaintiff and (b) cause Plaintiff to be released from his personal guaranty to Upper Savannah, in exchange for Plaintiff's agreement to convey his interest in Island Design to Defendant. Plaintiff alleges that Defendant made false representations at the time of the Stock Purchase Agreement.[2] At the time of the Stock Purchase Agreement Plaintiff believed that the outstanding indebtedness on the Upper Savannah revolving loan was approximately $75,000.00. However, Plaintiff later learned that Defendant had received $75,000.00, the balance of the revolving loan, in an individual capacity prior to the Stock Purchase Agreement.

Shortly thereafter, Island Design lost its franchise agreement. Defendant breached the Stock Purchase Agreement by failing to perform in accordance with its terms. Plaintiff still has his shares in Island Design.

On or about August 7, 2000 Plaintiff filed a complaint against Defendant and Island Design in the Court of Common Pleas, Eleventh Judicial Circuit in the State of South Carolina, County of McCormick for the Debtor's breach of contract, breach of fiduciary duty, fraud, and unfair trade practices, styled as: *Posillico v. Bratcher and Island Design, Inc.*, Case No. 00–CP–35–66.

On or about May 3, 2001 Upper Savannah filed a complaint in the Court of Common Pleas, Eleventh Judicial Circuit in the State of South Carolina, County of McCormick against Plaintiff and Defendant based upon their guaranties, styled as: *Upper Savannah Council of Governments v. Posillico, et al.*, Case No. 01–CP–35–50.[3]

On June 9, 2001 (the "Petition Date"), Defendant filed a voluntary petition under Chapter 7 of the Bankruptcy Code.

On July 31, 2001 Plaintiff conducted a 2004 examination of the Defendant. At the 2004 examination, Defendant testified that he had no interest in the following property which was included in his prior financial statements:

a. 1999 Ford Explorer valued at $36,000.00;

b. 1992 Mitsibishi Montero valued at $8,500.00;

c. 602 Robin-hood house and lot—One-third (1/3) interest valued at $35,000.00;

d. 207 Secession valued at $20,000.00;

e. 401 Magazine valued at $45,000.00; and

f. 106 Phillips Street valued at $10,000.00.

Accordingly, Defendant's financial statements contained false representations as to $154,500.00 worth of assets which De-

---

2. Plaintiff did not set forth the specific representations.

3. Upper Savannah has not filed an adversary proceeding in this bankruptcy case.

fendant concedes he has no interest in. Defendant also failed to represent that his pearl collection had been pawned and failed to disclose that his interest in $60,000.00 in certificates of deposit was fully encumbered by liens. Accordingly, Defendant, through his sworn financial statements, falsely represented his net worth to Plaintiff by a minimum amount of $339,500.00 out of listed net worths of $448,891.57 and $394,144.00.

As of the Petition Date, Defendant was indebted to Plaintiff for the following:

- November 30, 1998 check to Island Design in the amount of $6,000.00

- November 30, 1998 check to Defendant in the amount of $5,000.00

- December 15, 1998 check to Defendant in the amount of $468.00

- February 2, 1999 check to Defendant in the amount of $85,590.00 reduced by the $75,000.00 received by Plaintiff from advance on Upper Savannah loan ($10,590.00)

- February 4, 1999 check to Defendant in the amount of $1,000.00

- June 11, 1999 check to Island Design in the amount of $15,000.00

- June 14, 1999 check to Defendant in the amount of $25,000.00

- January 7, 2000 Stock Purchase Agreement in the amount of $57,000.00

Plaintiff asserts that the debt owed him by Defendant should be excepted from Defendant's discharge pursuant to §§ 523(a)(2)(A), 523(a)(2)(B), and 523(a)(4). Plaintiff also seeks to except from Defendant's discharge any amounts for which Plaintiff is found to be liable to Upper Savannah as a result of Plaintiff's guaranty of the revolving loan. Upper Savannah filed a Proof of Claim in the amount of $157,196.56.

## CONCLUSIONS OF LAW

### Legal Standard for Summary Judgment.

Pursuant to Federal Rule of Bankruptcy Procedure 7056, Plaintiff seeks entry of summary judgment on the Verified Complaint. Rule 7056 incorporates Federal Rule of Civil Procedure 56, and provides that summary judgment "shall be rendered forthwith if ... there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The Court's standard for considering a motion for summary judgment is clear. In *In re Macks*, 167 B.R. 254, 256 (Bankr. M.D.Fla.1994), the Court summarized the standard as follows:

This standard has been interpreted by the Supreme Court to mean:

"Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The facts in dispute must be *critical* to the outcome of the case and the dispute must be *genuine*, such that the evidence could support a verdict in favor of the non-moving party. *Id.* at 248, 106 S.Ct. at 2510; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party moving for summary judgment has the burden of demonstrating that no genuine issue as to any material fact exists, and that it is entitled to judgment as a matter of law. *Celotex Corp., supra*, 477 U.S. at 323, 106 S.Ct. at 2552, *Adickes v. S.H. Kress & Co.* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Gulfstream Land and Development v. Commissioner*, 71

T.C. 587, 596, 1979 WL 3690 (1979). Further, the facts relied upon by the moving party must be viewed in the light most favorable to the non-moving party so that any doubt as to the existence of a genuine issue of material fact will be resolved in favor of denying the motion. *Adickes v. S.H. Kress & Co., supra; United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

In opposing a motion for summary judgment, the other party may not simply rest upon mere allegations or denials of the pleadings: after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the other party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp., supra,* [477 U.S.] at 324, 106 S.Ct. at 2553.

Nevertheless, the motion must be granted if the Court is satisfied that no real factual controversy is present, so that the remedy can serve "its salutary purpose in avoiding a useless, expensive and time consuming trial where there is no genuine, material issue to be tried." *Lyons v. Board of Education,* 523 F.2d 340 (8th Cir.1975).

The standard for ruling on summary judgment motions "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judgment must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

While the fundamental goal of the Bankruptcy Code is to provide the honest debtor with a fresh start, such a policy must be tempered by the need to prevent dishonest debtors from using the law as a shield. *See Jones v. J.G. Wentworth S.S.C. Ltd. Partnership (In re Berghman),* 235 B.R. 683, 692 (Bankr.M.D.Fla.1999)(citing *Bracco v. Pollitt (In re Pollitt),* 145 B.R. 353, 355 (Bankr.M.D.Fla.1992)). Accordingly, under the circumstances prescribed in § 523 of the Bankruptcy Code, certain debts will be excepted from a debtor's discharge. *See id.*

## I. *Section 523(a)(2)(A)*

Section 523 provides, in pertinent part, that:

A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(West 2002).

In order to except a debt from discharge under 11 U.S.C. § 523(a)(2)(A), Plaintiff must prove that: (1) Defendant made a false representation with the purpose and intent of deceiving Plaintiff; (2) Plaintiff justifiably relied upon the representation; and (3) Plaintiff sustained a loss as a result of the representation. *Lang v. Vickers (In re Vickers),* 247 B.R. 530, 534 (Bankr.M.D.Fla.2000). Plaintiff asserts that Defendant made oral statements to Plaintiff regarding his net worth and contributions he would make to the business. Plaintiff contends that Defendant never made any contributions and that his oral statements and representations were false and were made with the purpose and in-

tent to deceive Plaintiff. Plaintiff asserts that he reasonably relied on Defendant's representations and sustained a loss as a result.[4]

Plaintiff asserts that all of the debts owed him by Defendant should be excepted from Defendant's discharge pursuant to § 523(a)(2)(A). For purposes of clarity, the Court will address separately the dischargeability, pursuant to § 523(a)(2)(A), of: 1) Defendant's liability to Plaintiff arising from the funds expended prior to the issuance of the financial statements and 2) Defendant's liability to Plaintiff arising from Defendant's breach of the Stock Purchase Agreement.[5]

### Defendant's liability to Plaintiff arising from the funds expended prior to the issuance of the written financial statements

■ Plaintiff asserts that he loaned money to Defendant and Island Design prior to the issuance of the written financial statements based on Defendant's numerous oral representations that he had the ability and willingness to contribute to the business venture. However, § 523(a)(2)(A) specifically excepts statements respecting a debtor's financial condition. Therefore, even if 1) Defendant made false oral representations as to his net worth and ability to contribute to the business venture, 2) Defendant made the representations with the intent and purpose to deceive Plaintiff, and 3) Plaintiff justifiably relied on those representations

when he loaned the $11,468.00 to Defendant and Island Design, as a matter of law that portion of the debt owed to Plaintiff by Defendant is not excepted from Defendant's discharge pursuant to § 523(a)(2)(A). Accordingly, the Court will deny Plaintiff's Motion for Summary Judgment pursuant to § 523(a)(2)(A) as to the money loaned prior to the issuance of the financial statements.

### Defendant's liability to Plaintiff arising from Defendant's breach of the Stock Purchase Agreement

■ Plaintiff alleges that the damages resulting from Defendant's breach of the Stock Purchase Agreement are non-dischargeable. However, there are genuine issues of material fact as to whether Defendant made a false representation, whether he did so with the purpose and intent to deceive Plaintiff, whether Plaintiff justifiably relied on the representation, and whether Plaintiff suffered damages as a result. Accordingly, the Court will deny Plaintiff's Motion for Summary Judgment pursuant to § 523(a)(2)(A) as to the damages from the breach of the Stock Purchase Agreement.

### II. Section 523(a)(2)(B)

Section 523(a)(2)(B) provides:

A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

---

**4.** Section § 523(a)(2)(A) requires justifiable but not reasonable reliance. *Field v. Mans*, 516 U.S. 59, 74–75, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). However, Plaintiff's failure to allege justifiable reliance, a less exacting standard than reasonable reliance, does not affect the outcome of the Motion.

**5.** Although Plaintiff asserts that all of the debt owed by Defendant to Plaintiff should be excepted from Defendant's discharge pursuant to § 523(a)(2)(A), Plaintiff's argument that the

portion of the debt resulting from the loans made after the issuance of the written financial statements and the portion of the debt resulting from Plaintiff's personal guaranty of the obligation to Upper Savannah (also incurred after the issuance of the written financial statements) should be excepted from discharge pursuant to § 523(a)(2)(B), precludes the application of § 523(a)(2)(A) to that portion of the debt.

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;

(West 2002).

***Funds expended after the issuance of the written financial statements and Defendant's guarantee of the obligation to Upper Savannah***

Plaintiff alleges that Defendant induced Plaintiff to loan money to Defendant and Island Design and to guarantee the revolving loan with Upper Savannah by publishing materially false financial statements with the intent to deceive Plaintiff. Plaintiff alleges that he reasonably relied on the financial statements in making the loans and in guaranteeing the obligation to Upper Savannah. Plaintiff contends that the amounts he loaned to Defendant and Island Design as well as Plaintiff's liability to Upper Savannah should be excepted from Defendant's discharge pursuant to § 523(a)(2)(B).

 Fraudulent intent need not be shown by direct evidence, but may be inferred from the totality of the circumstances. *See Bropson v. Thomas (In re Thomas),* 217 B.R. 650, 653 (Bankr. M.D.Fla.1998) (citing *American Sur. & Cas. Co. v. Hutchinson (In re Hutchinson),* 193 B.R. 61, 64 (Bankr.M.D.Fla. 1996)). Additionally, actual knowledge to support a finding of fraudulent intent may be established by showing a reckless indifference to the truth. *See Visotsky v.*

*Woolley (In re Woolley),* 145 B.R. 830, 834 (Bankr.E.D.Va.1991). The knowledge element is satisfied if a debtor's representation was known to be false or was recklessly made without knowing whether it was true or false. *See id.* at 834. At a minimum Defendant's testimony regarding his financial statements establishes a reckless indifference to the truth. There is therefore no genuine issue as to whether Defendant published the statements with the purpose and intent to deceive Plaintiff.

 A plaintiff must show a significant understatement of liabilities or exaggeration of assets in order for a statement to be materially false. *In re Floyd,* 177 B.R. 985 (Bankr.M.D.Fla.1995). The financial statements issued by Defendant in January and March 1999 are materially false writings concerning the debtor's financial condition. Defendant testified that he had no interest in at least $154,500.00 worth of assets that he listed in the financial statements. Additionally, Defendant failed to represent that his pearl collection valued at $125,000.00 had been pawned and also failed to disclose that his interest in $60,000.00 in certificates of deposit was fully encumbered by liens. Accordingly, the financial statements falsely represented Defendant's net worth by at least $339,500.00 out of listed net worths of $448,891.57 and $394,144.00.

 Whether a creditor's reliance is reasonable is a question of fact which is to be judged in light of the totality of the circumstances. *Coston v. Bank of Malvern (In re Coston),* 991 F.2d 257, 260 (5th Cir.1993). A bankruptcy court may consider, among other things: 1) whether there had been previous business dealings with the debtor that gave rise to a relationship of trust; 2) whether there were any "red flags" that would have alerted an ordinarily prudent lender to the possibility

that the representations relied upon were not accurate; 3) and whether even minimal investigation would have revealed the inaccuracy of the debtor's representations. *Id.* Plaintiff testified that he reasonably relied on Defendant's financial statements in loaning money to Defendant and Island Design and in guaranteeing repayment of the obligation to Upper Savannah. However, absent additional evidence as to what rendered Plaintiff's reliance reasonable, the Court cannot find that there is no genuine issue of material fact as to that element of § 523(a)(2)(B). The Court will therefore deny Plaintiff's Motion for Summary Judgment pursuant to § 523(a)(2)(B) as to the money loaned after the issuance of the financial statements and the guarantee of the repayment of the obligation to Upper Savannah.

### III. *Section 523(a)(4)*

■■■■■ 11 U.S.C. § 523(a)(4) excepts from a debtor's discharge any debt "for fraud or defalcation while acting in a fiduciary capacity..." (West 2002). "Fiduciary" under § 523(a)(4) is a substantially narrower concept than "fiduciary" under state law. *Clark v. Allen (In re Allen),* 206 B.R. 602, 607 (Bankr.M.D.Fla.1997). Federal courts have found "the traditional meaning of the term 'fiduciary'—a relationship involving confidence, trust, and good faith—to be far too broad for bankruptcy purposes." *Liberty National Bank v. Wing (In re Wing),* 96 B.R. 369, 374 (Bankr.M.D.Fla.1989) (citing *Chapman v. Forsyth,* 43 U.S. (2 How.) 202, 11 L.Ed. 236 (1844)). The fiduciary relationship necessary for an exception to discharge requires the existence of an express or technical trust. *American Surety & Casualty Co. v. Hutchinson, (In re Hutchinson),* 193 B.R. 61, 65 (Bankr.M.D.Fla.

1996). An express or technical trust exists when there is a segregated trust res, an identifiable trust beneficiary, and trust duties established by contract or statute. *Id.*

■■■■ Plaintiff argues that Defendant's status as an officer and director of Island Design establishes the fiduciary capacity contemplated by § 523(a)(4). S.C.Code Ann. §§ 33–8–300 and 33–8–420 (2002) codify the standards for officers and directors of South Carolina corporations and provide in pertinent part:

§ 33–8–300. *General standards for directors.*

(a) A director shall discharge his duties as a director, including his duties as a member of a committee:

(1) in good faith;

(2) with the care an ordinarily prudent person in a like position would exercise under similar circumstances; and

(3) in a manner he reasonably believes to be in the best interests of the corporation and its shareholders.

§ 33–8–420. *Standards of conduct for officers.*

(a) An officer with discretionary authority shall discharge his duties under that authority:

(1) in good faith;

(2) with the care an ordinarily prudent person in a like position would exercise under similar circumstances; and

(3) in a manner he reasonably believes to be in the best interests of the corporation and its shareholders.

§§ 33–8–300 and 33–8–420 lack any provision for an express or technical trust for corporate officers and directors.[6] Even if

---

6. In fact, the official comment to § 33–8–300 states that the statute "does not use the term

'fiduciary' in the standard for directors' conduct, because that term could be confused

Defendant owed a general fiduciary duty as a corporate officer, it is clear that no statutorily created trust existed. Therefore, the Court holds that the duties owed by Defendant, in his position as an officer and director of Island Design, to either the corporation or to Plaintiff are insufficient to establish the fiduciary capacity required by § 523(a)(4). Accordingly, the Court will deny Plaintiff's Motion for Summary Judgment as to Count III of the complaint.

### CONCLUSION

The Court will deny Plaintiff's Motion for Summary Judgment as to Count 1 of the Complaint. The funds expended by Plaintiff prior to the issuance of the written financial statements are not excepted from Debtor's discharge pursuant to § 523(a)(2)(A). Additionally, Plaintiff's argument that: 1) the money he loaned Defendant after the issuance of the financial statements and 2) the liability resulting from Plaintiff's guaranty of the revolving loan to Upper Savannah should be excepted from Defendant's discharge pursuant to § 523(a)(2)(B), preclude the application of § 523(a)(2)(A) thereto. Finally, there are genuine issues as to whether Defendant made a false representation at the time of the Stock Purchase Agreement, whether he did so with the purpose and intent to deceive Plaintiff, whether Plaintiff justifiably relied on the false representation, and whether the damages from the breach of the Stock Purchase were a result of the false representation.

The Court will deny Plaintiff's Motion as to Count II of the Complaint. There is a genuine issue as to whether Plaintiff's reliance on Defendant's financial was reasonable when he made loans to Defendant and

with the unique attributes and obligations of a fiduciary imposed by the law of trusts, some of which are not appropriate for the directors

Island Design and when he guaranteed the revolving loan to Upper Savannah.

The Court will deny Plaintiff's Motion for Summary Judgment as to Count III of the Complaint. Defendant's status as a director and officer of Island Design does not establish the fiduciary capacity required by § 523(a)(4). None of the funds owed by Defendant to Plaintiff will be excepted from Defendant's discharge pursuant to § 523(a)(4).

of a corporation." S.C.Code Ann. §§ 33–8–300 official comment 1.